IDA A. BROOKS *vs.* SEARS, ROEBUCK AND CO.

Middlesex. November 3, 1937. — January 31, 1939.

Present: FIELD, C.J., LUMMUS, QUA, & DOLAN, JJ.

*Negligence,* One owning or controlling real estate, Parking space. *Evidence,* Matter of common knowledge.

The mere fact that the proprietor of a well lighted parking space maintained on the ground to facilitate orderly parking timbers which were four inches high and marked the boundary of the space in front of a row of trees did not warrant a finding of negligence on his part toward a customer who stumbled on one of the timbers in crossing the parking space.

It is a matter of common knowledge that wooden curbs are placed on the ground in outdoor spaces for the parking of motor vehicles in this Commonwealth to facilitate orderly parking.

TORT. Writ in the Third District Court of Eastern Middlesex dated May 7, 1934.

On removal to the Superior Court the action was tried before *Swift*, J., and a verdict was returned for the plaintiff in the sum of $875. The defendant alleged exceptions.

*J. W. Black, Jr.*, for the defendant.

*E. P. Shaw*, for the plaintiff.

DOLAN, J. This action of tort to recover compensation for personal injuries was tried to a jury. A verdict was returned for the plaintiff, and the case now comes before us on the defendant's exceptions to the denial of its motion for a directed verdict, to the judge's refusal to give certain instructions to the jury, to the admission of certain evidence, and to the judge's charge.

The evidence tended to show the following facts: On March 20, 1934, the plaintiff drove her automobile to premises owned and controlled by the defendant, on Massachusetts Avenue, in the city of Cambridge, intending to purchase some tires. She was accompanied by a friend and drove to the parking lot maintained by the defendant near its automobile service station. The parking lot forms a semicircle at the rear of the building, its open end, farthest from the building, being the entrance to the parking space. The service station is situated adjacent to the outer side of this entrance. There is a row of saplings three or four feet apart in the center of the parking space which runs parallel with the length of the defendant's store building. Running along the same direction as the saplings, on both sides and equidistant therefrom, are two wooden parking curbings about four inches high and four inches thick. These timbers are laid flat on the ground and nailed on their inner sides to wooden stakes driven into the ground. Lines or markers extend from these curbs to facilitate parking. Automobiles park on each side of the curbs. The actual parking space is of gravel, but a cement road circles the whole parking lot up to the rear door of the defendant's store building. The plaintiff left her vehicle at the service station, and accompanied by her friend walked directly into the parking space intending to cross the same to the rear entrance of the main store. There were quite a few vehicles parked at the time. As she proceeded toward a vacant

space in the parking area, an automobile was "pulling out" at her left, and she said to her friend "Look out for that car!" Another automobile was coming in behind the plaintiff "to park." She turned to watch that vehicle and to gauge the distance between the trees, and fell over one of the wooden curbings. The automobiles that the plaintiff noticed had their headlights on. She had seen the trees before the accident but had not seen the curbing. "She didn't think that she had been to the parking place before." She thought she was looking. She "was trying to watch everything, to get away from the car that was driving in." Photographs show overhead lights suspended on posts in the parking space.

The defendant owed a duty to the plaintiff, as an invitee, to use ordinary care and diligence to keep the parking space in a reasonably safe condition, having regard to its construction, the purposes for which it was arranged, and the customary conduct of the defendant's invitees who made use of it. *Rosston* v. *Sullivan*, 278 Mass. 31, 34. *Rynn* v. *Fox-New England Theatres, Inc.* 299 Mass. 258, 259. *Correira* v. *Atlantic Amusement Co., ante*, 81. Apart from obvious dangers the plaintiff, as an invitee, could assume that the premises were reasonably safe for these uses. *Cruickshank* v. *Brockton Agricultural Society*, 260 Mass. 283, 284.

There is no evidence reported which would warrant a finding that the wooden curbs were not in good repair. It is a matter of common knowledge that similarly constructed curbs exist in parking spaces in this Commonwealth. They are incidental to the ordinary and common construction of such places and are structures the plaintiff should have expected to find in the parking space involved. *Cowen* v. *Kirby*, 180 Mass. 504, 506. *Heaney* v. *Colonial Filling Stations, Inc.* 262 Mass. 338, 341. They facilitate the orderly parking of motor vehicles and tend to prevent collisions. They are more common than escalators, the general use of which by a railway company this court took judicial notice of in the case of *Conway* v. *Boston Elevated Railway*, 255 Mass. 571, 573. The defendant had a right

to assume in the actions of those who frequented its premises "the exercise of ordinary circumspection as to their footing." *Hoyt* v. *Woodbury,* 200 Mass. 343, 345.

The accident occurred between 4 and 5 P.M. It was dusk, but the plaintiff could see perfectly well. As she started to cross the parking space automobiles were parked there, but the vacant space that she and her companion entered was wide enough for two "cars." "Quite a few cars" were parked on the other side. An automobile came behind them to be parked in the space they had entered. Its headlights were lighted. The plaintiff turned to "watch that car and gauge the distance between the trees and didn't see . . . [the] board sticking up from the ground and fell over it." "There were other lights." An automobile which was being parked in front of the plaintiff "had lights on." Her companion testified that there were lights from behind and from in front of "them" when the accident happened. They were focused on "her" and the area of ground over which "she was walking."

The plaintiff had the burden of proving that the premises were not reasonably safe in their construction and maintenance. There is no evidence that would warrant the jury in finding that they were not reasonably safe in their construction, and in the circumstances just outlined we think the jury would not be warranted in finding that the accident was due to the fact that the premises were not properly illuminated at the time of its occurrence. *Lord* v. *Sherer Dry Goods Co.* 205 Mass. 1, 3. See also *Rosston* v. *Sullivan,* 278 Mass. 31, 35, and cases cited.

The defendant's motion for a directed verdict should have been granted. Accordingly the entry will be

*Exceptions sustained.*
*Judgment for the defendant.*